IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| XOCHITL JAZMIN VELASCO PADILLA, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | Case No.: 4:16CV00024 _____ |
| | ) | |
| JOE RICHARD TROXELL, | ) | |
|     Respondent. | ) | |

## PETITION FOR RETURN OF CHILD

COMES NOW Petitioner Xochitl Jazmin Velasco Padilla, by counsel, and prays this Court to order the immediate return to Mexico of her four-year-old son Jeramy Richard Troxell Velasco, after Joe Richard Troxell took the Child from his Mother in Mexico on December 17, 2014, and subsequently arranged to have the Child transported from his habitual country of residence, Mexico, on or about February 17, 2015 to Halifax County, Virginia, where Respondent further retained him. The Petitioner filed this Petition pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention"), the International Child Abduction Remedies Act (22 U.S.C. § 9001 *et seq.*, formerly 42 U.S.C. § 11601 *et seq.*) ("ICARA"), and *patria potestas* rights under Mexican law, in order for the Petitioner to be reunited with her son and to assume her rights of custody pursuant to Mexican law.

## PARTIES AND JURISDICTION

1.     Xochitl Jazmin Velasco Padilla ("Petitioner"; "Mother") is a citizen and resident of Oaxaca, Mexico. Her date of birth is September 2, 1991. She obtained a temporary U.S. Humanitarian Visa on April 21, 2016, and entered the United States on May 2, 2016, to attend proceedings related to the Hague Convention on international parental child abduction.

2.     The Petitioner's address in Mexico is: Alari num. 8, barrio del Nino, Villa de Zaachila, Oaxaca, Mexico. She has temporary lodging in the U.S. that is subject to change frequently, so her official address during the proceedings will be in the care of her counsel's address at 14407 Justice Road, Midlothian, Virginia 23113.

3.     Joe Richard Troxell ("Respondent"; "Troxell") is a citizen of the United States, and is currently residing at 2056 Alphonse Dairy Road, South Boston, Virginia 24592.

4.     Jeramy Richard Troxell Velasco ("Jeramy"; the "Child") is a Mexican child, born on May 27, 2011. (See Certificate of Live Birth, Exhibit 1). He is a citizen of Mexico, and will reach the age of 16 on May 27, 2027.  He is currently in the custody of the Halifax Department of Social Services ("HDSS"), and is in foster care pursuant to the Foster Care Plan filed on May 13, 2016.

5.     This Court is vested with original jurisdiction pursuant to the Hague Convention and 22 U.S.C. § 9001 *et seq*.

6.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

## FACTS

7.     The Petitioner incorporates by reference the allegations contained in the above paragraphs as if alleged in this section of the Petition.

8.     In August 2010, the Petitioner was involved in a brief personal relationship with Troxell's son Sam Richard Troxell ("Sam") in Rio Grande, Oaxaca, Mexico. Not long after that relationship ended, the Petitioner learned she was pregnant and delivered the Child on May 27, 2011 in the state of Oaxaca, Mexico. Although she was involved in another relationship at approximately the same time that she met Sam, the Petitioner believed that Sam was the biological father of the Child.

Case 4:16-cv-00024-JLK   Document 1   Filed 05/23/16   Page 2 of 14   Pageid#: 2

9.      Sam has denied that he is the biological father of the Child through his counsel, James Midkiff of Halifax County. Sam has never met the Child or had any relationship with the Child or the Petitioner after he left Mexico, and moved back to the U.S. at some time after August 2010. He is currently believed to be living in North Carolina, at an unknown address.

10.     At the time of the birth of the Child, Troxell reportedly owned and operated a laundry business in the state of Guerrero, Mexico. He visited the Petitioner and her family and attempted to persuade her to move in with him approximately eight (8) months after the Child was born, in or around January 2012.

11.     After the Petitioner rejected his overtures, Troxell made threats against her and sought to intimidate her. Unsuccessful, Troxell left the area where she lived and reappeared in the fall of 2014, when the Child was three (3) years and seven (7) months old. Troxell claimed that he wanted to help the Petitioner and the Child by first securing Jeramy's Mexican passport, and then the Petitioner's passport so that she and the Child could come to the U.S. together, and legally.

12.     In order to accomplish this and in order for the Child to be an American citizen, Troxell insisted that the Petitioner place Troxell's name on the Child's Mexican birth certificate as his father in order to get legal papers in the U.S.

13.     Under these false pretenses, and by force of intimidation, Troxell then insisted that the Petitioner accompany him with the Child to the Office of Vital Records at Villa de Tututepec de Melchor Ocampo, Juquila, Oaxaca, Mexico. There Troxell sought to register himself as the father of the Child on a Mexican birth certificate.

14.     On or about December 17, 2014, the Petitioner accompanied Troxell to the offices of the Mexican Secretary of External Affairs (Secretaria de Relaciones Exteriores; "SRE") to

Case 4:16-cv-00024-JLK   Document 1   Filed 05/23/16   Page 3 of 14   Pageid#: 3

obtain a Mexican passport for the Child. While awaiting the processing of the Mexican passport, Troxell took the Petitioner, the Child, and his wife, Blanca, to a park nearby called "El Arbol Tule [The Tule Tree]."

15. Before leaving the park, the Petitioner excused herself to use the restroom, leaving the Child with Troxell and Blanca. Upon returning from the restroom, the Petitioner found that Troxell and Blanca had left with the Child. She has not seen her Child since that day.

16. For a period of time after the abduction, the Petitioner was in occasional contact by cellular telephone with Troxell. On each occasion she attempted to convince Troxell to bring the Child back to her, but Troxell insisted that the Child would have a better life with him and his new wife in the U.S.

17. She discontinued these calls when it became apparent that Troxell would not return her Child, and she proceeded through the Mexican Central Authority which initiated this case pursuant to the Hague Convention on March 3, 2015. (See Mexican Central Authority Application for Return of Child to U.S. Department of State, Exhibit 2; U.S. Dept. of State letter, Exhibit 3).

18. The Central Authority of the United States, the Department of State, took notice of the case, communicating with the undersigned and the presiding judge where the initial Petition was filed in Halifax County, Virginia. (See Letters from the Department of State to Counsel and the Honorable Joel C. Cunningham, dated August 13, 2015, and February 1, 2016, Exhibits 4 and 5, respectively).

19. The Petitioner has consistently maintained that she did not give Troxell permission to take her Child from her custody or to leave Mexico with the Child, and believes

that the Child has been abducted and permanently taken from her by Troxell. (See Missing Person Report, Exhibit 6).

20.    The Child's habitual residence from the time of his birth until the abduction by Troxell was Oaxaca, Mexico.

21.    It is unknown where Troxell traveled with the Child from December 17, 2014 until February 17, 2015, but on that date the Child crossed the U.S. border without U.S. produced documents to support his U.S. citizenship at McAllen, Texas, where he was detained by Border Patrol authorities. Border Patrol contacted the Petitioner and she agreed to pick up the Child, but instead they released the Child into the custody of Troxell.  A Mexican consular official sent letters to the Texas authorities questioning these actions. (See Mexican Consular letters sent to Rio Grande River, Texas authorities, dated February 19, 2015, Exhibit 7).

22.    Following his entry into the U.S. at McAllen, Texas, Troxell transported the Child to South Boston, Virginia where he was located by the Petitioner's attorney who initiated proceedings in accordance with the Hague Convention and ICARA in the Halifax Circuit Court on December 11, 2015, less than one year before the alleged wrongful removal from Mexico.

23.    Subsequently, as set forth below, the Halifax Circuit Court ordered the Child into temporary custody of the HDSS after Troxell told both the Petitioner's counsel and a Deputy Clerk of the Halifax Circuit Court that he intended to flee the jurisdiction and take the Child from Halifax County and travel back to Mexico. The Child remains in the custody of the HDSS at the time of the filing of this Petition.

## PROCEDURAL POSTURE

24.    The Petitioner incorporates by reference the allegations contained in the above paragraphs as if alleged in this section of the Petition.

Case 4:16-cv-00024-JLK   Document 1   Filed 05/23/16   Page 5 of 14   Pageid#: 5

25.     On March 3, 2015, the Petitioner formally filed an application for the return of the Child with the Mexican Central Authority, pursuant to the Hague Convention and ICARA as incorporated by reference in Virginia Code § 20-146.23. (See Exhibit 2). A *Petition for Return of Child* was filed before the Halifax Circuit Court on December 11, 2015, alleging the same matters involved herein. (See Petition, Exhibit 8).

26.     Petitioner served the Petition on the Respondent on January 5, 2016.

27.     Following the letter sent by the U.S. Department of State to the Halifax Circuit Court judge, the matter was set for hearing on March 29, 2016. (See Exhibit 4).

28.     On the date of the hearing, the Halifax Circuit Court ruled from the bench that it was appropriate to return the Child to Mexico to his Mother, but that a custodian would be necessary in order to accompany the Child to Mexico. (Cir. Ct. Tr. at p. 20, l. 15; p. 28, l. 8; p. 31, l. 20, Exhibit 9).

29.     The Petitioner was unable to come to the U.S. to attend the hearing on March 29, 2016, and there was no custodian present to accompany the Child to Mexico. In order to protect the Child from Troxell, who expressed his intent to flee the jurisdiction, the Halifax Circuit Court thereafter placed the Child in temporary custody of the HDSS, a subordinate office of the Virginia Department of Social Services ("VDSS"), pending the arrival of a custodian pursuant to the Hague Convention to accompany the Child back to Mexico in coordination with the Department of State. (Cir. Ct. Tr. at p. 20, l. 15; p. 28, l. 8; p. 31, l. 20, p. 34, l. 14-17, Exhibit 9).

30.     At the March 29, 2016 hearing, the HDSS questioned whether it had jurisdiction under Virginia law and the regulations of the VDSS, but the Circuit Court ordered the agency to take temporary custody of the Child. (Cir. Ct. Tr. at p. 34, l. 18 through p. 35, l. 21; p. 41, l. 12 through p. 45, l. 18; p. 47, l. 15- 19, Exhibit 9).

31.     A subsequent hearing was held before the Halifax Circuit Court on March 31, 2016. At that hearing, Petitioner's counsel offered an order consistent with the March 29th rulings from the bench. Also at this hearing, counsel was accompanied by a custodian with experience in returning children abducted under circumstances arising under the Hague Convention. (See Consulate Letter dated March 30, 2016, Exhibit 10). Based on the objections of the Guardian ad Litem ("GAL"), whom the Circuit Court had appointed, and counsel of the HDSS, the Child remained in the custody of the HDSS and the case was continued over the Petitioner's objection.

32.     The presiding judge at the two Circuit Court proceedings retired from the bench on March 31, 2016, and the Petition was placed on the general court's docket.

33.     On the same day, March 31, 2016, the HDSS filed a petition and affidavit in the Halifax Juvenile and Domestic Relations Court ("JDR Court") alleging negligence, abuse, or abandonment by the Petitioner and the alleged father, and seeking the assignment of the Child to the VDSS and its HDSS branch office. (See *ex parte* Petition and supporting Affidavit, Exhibits 11 and 12, respectively).

34.     The first hearing of the HDSS petition was held before the Halifax JDR Court on April 6, 2016, at which time the case was continued until May 4, 2016. At the April 6th hearing the issue of jurisdiction of the VDSS was raised and the Court acknowledged that it might be divested of jurisdiction at the rescheduled Circuit Court hearing. (See JDR Court's Order of April 5, 2016, Exhibit 13; JDR Ct. Tr. at p. 21, l. 16, Exhibit 14).

35.     The Petitioner was granted a Humanitarian Visa by U.S. immigration authorities on April 20, 2016 in order to attend the proceedings under the Hague Convention in Virginia. All counsel involved in the case as well as the Halifax Circuit Court were informed of her receipt of

her Humanitarian Visa by e-mail on April 21, 2016. (See e-mail from Petitioner's Counsel, Exhibit 15).

36. Counsel for Troxell, the HDSS, and the GAL were also informed that the Petitioner was arriving on May 2, 2016, that she was available for interview or deposition prior to the scheduled hearing, and that she intended to testify before the Circuit Court and/or JDR Court on May 4, 2016. (See e-mail from Petitioner's Counsel, Exhibit 16).

37. Petitioner's counsel attempted to coordinate available dates for the projected third Circuit Court hearing both prior to and on the May 4, 2016 date for the JDR Court hearing, and concluded that a hearing could be scheduled in the Halifax Circuit Court at 1 PM or later on May 4, 2016. The Circuit Court indicated that May 4th was open on their docket, so the Petitioner's counsel, after informing other counsel, filed a Motion for Emergency Hearing in Halifax Circuit Court to be held at or after the same hour of the scheduled hearing before the Halifax JDR Court so that the issue of the underlying Petition could be decided. (See e-mail from Judge's Chambers and e-mails from Petitioner's counsel, and Emergency Motion, Exhibits 17 and 18, respectively).

38. Since the Circuit Court's docket was open for a hearing at 1 PM or after 1 PM on May 4, 2016, Petitioner's counsel also sought to continue the JDR Court hearing based on the prospective Circuit Court hearing at 1 PM or after on May 4th. (See Motion, Exhibit 19).

39. The Circuit Court did not place the Motion for Emergency Hearing on the docket for May 4th, and the JDR Court continued the May 4th hearing.

40. After the Halifax Circuit Court did not place the Emergency Motion on the hearing docket, and the JDR Court removed the scheduled hearing from their docket, dates for a

subsequent hearing in the Circuit Court were circulated among counsel, with the earliest date opposing counsel and the GAL could agree to being August 8, 2016.

41.     The Petitioner is in the U.S. on a limited Visa of limited duration, and is approaching her sixth month of pregnancy. She has experienced and continues to experience physical and psychological symptoms related to the pregnancy and the stress related to her separation from the Child since December 17, 2014.

42.     It is unlikely the Petitioner will be able to attend the hearing before the Halifax Circuit Court on the August date based on the expected date that she will give birth. In addition, she has left her other two children in the care of her mother in Mexico in order to attend the proceedings involved in her Child's abduction here in Virginia.

43.     Based on the provisions of Article 11 of the Hague Convention, and the likelihood that a hearing could not be held before the Petitioner gives birth in Mexico, Petitioner's counsel submitted a nonsuit order as a matter of right to the Halifax Circuit Court on May 11, 2016, and is therefore filing this Petition before this honorable Court in order to secure her rights under the Hague Convention.

## THE HAGUE CONVENTION REQUIRES THAT THE CHILD BE RETURNED TO MEXICO

44.     The Petitioner incorporates by reference the allegations contained in the above paragraphs as if alleged in this section of the Petition.

45.     This Petition is brought pursuant to the Convention on the Civil Aspects of International Child Abduction, finalized at the Hague on October 25, 1980 (the "Hague Convention"), and the International Child Abduction Remedies Act ("ICARA"). (See Exhibits 21 and 22) The Hague Convention has been enforced in the United States since July 1, 1988, and was ratified between the U.S. and Mexico on October 1, 1991.

Case 4:16-cv-00024-JLK   Document 1   Filed 05/23/16   Page 9 of 14   Pageid#: 9

46.    The Hague Convention applies to cases where a child under the age of sixteen has been removed from his or her habitual residence in breach of rights of custody of a petitioner, which the petitioner had been exercising at the time of the wrongful removal or wrongful retention of the child. *Hague Convention*, Art. 4.

47.    Article 1 of the Hague Convention expressly sets forth the objectives: (1) "[t]o secure the prompt return of children wrongfully removed to or retained in any Contracting State" and, (2) "[t]o ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." *Hague Convention*, Art. 1.

48.    The Child's habitual residence within the meaning of Article 3 of the Hague Convention is Mexico. The last intent of the Petitioner was for the Child to live in Mexico. *See Miller v. Miller*, 240 F.3d 392, 400 (4th Cir. 2001). While the Petitioner denies that Troxell is the Child's father, even if he is, one parent cannot create a new habitual residence by wrongfully removing and sequestering a child. *Id.* (See Mexican School Records, Exhibit 20).

49.    The Petitioner did not consent to Troxell's removal and retention of the Child in the U.S.

50.    The Petitioner is the biological mother of the Child, and as such enjoys natural custody rights over the Child. Further, under the Hague Convention and Mexican law, Troxell's removal of the Child from Mexico was in breach of the Petitioner's *patria potestas* custody rights. *See Alcala v. Hernandez*, 2014 U.S. Dist. LEXIS 153728, *13 (S.C. 2014) (finding that the U.S. recognizes presumed parental rights under Mexican law).

51.    The Petitioner is listed as the Child's mother on the live birth certificate, displaying further proof of her existing parental and custodial rights. Troxell has no right of

custody over the Child and under the language of the Hague Convention has wrongfully removed and abducted the Child from his Mother. (See Live Birth Certificate, Exhibit 1).

52.     The Petitioner was exercising her above mentioned custody rights within the meaning of Articles 3 and 5 of the Hague Convention at the time of the Respondent's wrongful removal and retention of the Child. The Petitioner has exercised her custody rights over the Child from the time he was born on May 27, 2011, until the time he was wrongfully removed on or about December 17, 2014.

53.     Prior to the proceeding initiated by the filing of the Petition on December 11, 2015, the Petitioner has never had her custody rights taken away or limited by any judicial proceeding. The only time that the Petitioner has not lived with and cared for the Child has been during this time of wrongful removal and retention. Further, there is no independent evidence that the Child would either be exposed to physical or emotional harm, or placed in an intolerable situation upon his return to Mexico. *See Hazbun Escaf v. Rodriguez*, 191 F. Supp. 2d 685, 688-89 (E.D. Va. 2002) (affirming the elements of a proper petition pursuant to the Hague Convention).

54.     The Petitioner asserts that this Court has the appropriate concurrent jurisdiction to bring this Petition to hearing.

55.     Based on Troxell's previous representations and communications to counsel and the Circuit Court staff, if the Child is returned to him he intends to flee Halifax County with the Child and return to Mexico to seek custody there.  In the event the Child is released to Troxell, irreparable harm will occur to the well-being of the Child and to his Mother as a result of her lack of access to the Child.

## THE HAGUE CONVENTION AND ICARA REQUIRE THE RETURN OF THE CHILD TO MEXICO BE PROMPT, EXPEDITIOUS, AND FORTHWITH

Case 4:16-cv-00024-JLK   Document 1   Filed 05/23/16   Page 11 of 14   Pageid#: 11

56.     The Petitioner incorporates by reference the allegations contained in the above paragraphs as if alleged in this section of the Petition.

57.     The Hague Convention "secure[s] the *prompt* return of children wrongfully removed or retained…" *Hague Convention*, Art. 1 (emphasis added). (See Hague Convention on the Civil Aspects of International Child Abduction, Exhibit 21).

58.     The Hague Convention mandates "judicial or administrative authorities of Contracting States [to] act *expeditiously* in proceedings for the return of children…, [and requests] a decision within six weeks from the date of commencement of the proceedings…." *Hague Convention*, Art. 11 (emphasis added).

59.     The Hague Convention also states that "[w]here a child has been wrongfully removed or retained…, and the date of the commencement of the proceedings [occurs]…less than one year…from the date of the wrongful removal or retention, the authority concerned shall order the return of the child *forthwith*." *Hague Convention*, Art. 12 (emphasis added).

60.     As indicated above, Troxell removed the Child from his Mother in Mexico on December 17, 2014, crossed the border at McAllen, Texas on February 17, 2015, then retained him in Halifax County until he received service with the first Petition filed to return the Child. Once Troxell was aware of the initial hearing on March 29, 2016, he gave notice to the Circuit Court and to Petitioner's counsel of his intention to further retain the Child until he could seek custody in Mexico. Only at that time did the HDSS take the child into temporary custody to protect the Child further removal and retention by Troxell. The HDSS made no recommendation regarding custody, and the JDR Court has specifically indicated that it is not sure if it has the jurisdiction to determine custody.

61.     According to the Hague Convention, after receiving notice of an action brought under the Convention, "the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained *shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention*...." Accordingly, the Halifax JDR Court does not have jurisdiction to rule on custody at this time. *Hague Convention*, Art. 16 (emphasis added).

62.     At the initial Circuit Court hearing, Troxell acknowledged that he intended to litigate custody in Mexico. This is where any custody controversy should be considered. (Cir. Ct. Tr. at p. 7, 1. 17; p. 15, 1. 14, Exhibit 9)

63.     The Petitioner has punctually moved through the proper channels via the Mexican Central Authority and the U.S. Department of State, and seeks to have the Child released to her after the hearing concerning this Petition so that she and her Child may return to their place of habitual residence in Mexico.

WHEREFORE, Petitioner Xochitl Jazmin Velasco Padilla respectfully requests the Court to grant the following relief:

1. The immediate release of the Child from HDSS custody in foster care, and the return of the Child to the Petitioner pending the dispositive hearing in this Court regarding the return of the Child with his Mother to Mexico;

2. An immediate order, pursuant to 22 U.S.C. § 9004(a), prohibiting the Respondent from removing, or arranging for the removal of, the Child from the jurisdiction of the Court pending a further order of the Court (See Exhibit 22, listed as the ICARA with parallel citations as 42 UCS 11604 (a) et seq);

3. An immediate order, pursuant to 22 U.S.C. § 9004(a), prohibiting Troxell from leaving this jurisdiction prior to the final resolution of this action and requiring him to turn over his and the Child's passports to the Court, if they exist;

4. An immediate order, pursuant to 22 U.S.C. § 9004(a), requiring the Respondent and/or the HDSS to appear in this Court with the Child to show cause why the Child has been kept from his Mother in violation of U.S. and international law;

5. An order, pursuant to the Hague Convention and ICARA, directing a prompt return of the Child to his habitual residence of Mexico; and,

6. All legal costs and fees incurred in bringing this action, pursuant to 22 U.S.C. § 9007(b)(3) to be assessed against the Respondent, as well as all other relief the Court deems appropriate and necessary.

Respectfully submitted,

XOCHITL JAZMIN VELASCO PADILLA

By:_____
                        Counsel

E. Wayne Powell, Esq. (VSB No.: 19550)
POWELL LAW GROUP, P.C.
14407 Justice Road
Midlothian, VA 23113
Telephone: (804) 794-4030
Facsimile: (804) 794-6576
*Counsel for Petitioner*